Orlando ANGULO, Appellant,

v.

The STATE of Texas, Appellee.

No. 1197–84.

Court of Criminal Appeals of Texas,
En Banc.

April 1, 1987.

Geraldo G. Acosta, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Winston E. Cochran, Jr. and Frances Madden, Asst. Dist. Attys., Houston, and Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

W.C. DAVIS, Judge.

Appellant was found guilty, after a plea of nolo contendere, of possession of a controlled substance with the intent to deliver. He was sentenced to three years incarceration in the Texas Department of Corrections pursuant to a plea bargain agreement. Appellant filed a "Motion to Suppress" prior to his plea. The motion was denied after a hearing in the trial court.

On direct appeal the First Court of Appeals in Houston, in an unpublished opinion, concluded that under the Fourth Amendment to the U.S. Constitution, the arresting officers lacked sufficient probable cause to make a warrantless search of appellant's automobile. The Court of Appeals evaluated probable cause by looking at the totality of the circumstances under guidelines established in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). We granted the State's Petition for Discretionary Review to determine whether the police officers had a sufficient basis for searching appellant's automobile.

The record reflects that Officer S.L. Shafer received an anonymous telephone tip on June 23, 1983, which revealed the following information: Shafer was instructed that a red American Motors Pacer automobile with license plate identification RUV 662 contained narcotics; the informant told Shafer that the automobile would contain two Cuban males, one of whom would be appellant. In addition, the informant explained that the Pacer's gasoline cap was missing and that a red rag was

being used in its place. The destination of the automobile would be 7201 Spencer Highway, Casa Maria Apartments, number 54. The informant also told Shafer that time was of the essence as the car was already en route. The informant did not reveal the source of his information.

After receiving this information from Shafer, Lt. William McBeth drove to the Casa Maria Apartments and observed the above-mentioned automobile, occupied by two males, parked in a space directly in front of apartment number 54. McBeth also noted the red rag hanging from the gasoline intake. McBeth observed the two men get out of the car as they were approached by others. When an additional automobile drove into the lot and parked directly behind the Pacer, McBeth, based on his experience in narcotics investigation, initiated an investigatory stop and ascertained that one of the original occupants of the automobile was appellant, the party named by the informant

When Shafer arrived on the scene he talked briefly with appellant and then searched the vehicle. This search produced 2000 Methaqualone pills located in paper sacks inside the spare tire compartment.

Shafer further testified that he had been involved in prior surveillance at apartment 54 because of suspected narcotics activity. McBeth testified that he had been working on a narcotics investigation on apartment 54 for two months and that he had personally observed what appeared to be narcotics related "traffic in and out of the apartment" there on twenty-five occasions. McBeth also had information from a reliable confidential informant that a resident of apartment 54 was selling narcotics at an adjacent gameroom.

Appellant argued on appeal that there was insufficient probable cause to support the search of his automobile. Appellant attempted to distinguish *Gates*, supra, by showing that in that case the officers had an extensive period of time between receiving the tip and making the search during which independent police investigation took place, while in the instant case the limited

amount of time between tip and search did not allow for independent investigation. Appellant argued that because this independent police investigation, which corroborated much of the anonymous tip information in *Gates*, supra, added immeasurably to the finding of probable cause in that case and was absent here, the trial court's denial of appellant's Motion to Suppress was erroneous. The First Court of Appeals in Houston agreed and reversed appellant's conviction.

We are of the opinion that, under the totality of the circumstances shown in the instant case, the Court of Appeals erred in determining that the officers did not have probable cause to search appellant's automobile.

At the outset we note that the standard of reviewing the existence of probable cause established in *Gates*, supra, has replaced the two-prong approach of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Further, the "totality of the circumstances" approach in determining probable cause established in *Gates*, supra, applies to warrantless as well as warrant searches. *United States v. Mendoza, et al.*, 722 F.2d 96 (5th Cir.1983); *Eisenhauer v. State*, 678 S.W.2d 947 (Tex. Cr.App.1984).[1] As a result of *Gates*, supra, the duty of the reviewing court is to look to the "totality of the circumstances" to determine if there exists a substantial basis for concluding that probable cause existed at the time of the questioned action.

In *Gates*, supra, the Bloomingdale, Illinois, Police Department received an anonymous letter which read:

This letter is to inform you that you have a couple in your town who strictly make their living on selling drugs. They are Sue and Lance Gates, they live on Greenway off Bloomingdale Rd. in the condominiums. Most of their buys are done in Florida. Sue his wife drives their car to Florida, where she leaves it to be loaded up with drugs, then Lance flys down and drives it back. Sue flys back after she drops the car off in Florida. May 3 she is driving down there again and Lance wil be flying down in a few days to drive it back. At the time Lance drives the car back he has the trunk loaded with over $100,000.00 in drugs. Presently they have over $100,000.00 worth of drugs in their basement.

They brag about the fact they never have to work, and make their entire living on pushers.

I guarantee if you watch them carefully you will make a big catch. They are friends with some big drug dealers, who visit their house often.

Lance and Susan Gates

Greenway

in Condominiums

462 U.S. at 225, 103 S.Ct. at 2325.

After further investigation, the Bloomingdale Police Department discovered that Lance Gates had been issued an Illinois driver's license and that he had made a reservation on an Eastern Airlines flight to Florida for May 5th.

An agent for the Drug Enforcement Administration confirmed that Lance Gates boarded the Eastern Airlines flight to Florida. Other federal agents in Florida observed Lance Gates arrive in West Palm Beach and take a taxi to the Holiday Inn where he occupied a room reserved for Susan Gates. The next morning Lance Gates left Florida with a female companion.

An affidavit setting forth these facts along with a copy of the letter was presented to a magistrate who issued a search warrant. Pursuant to the warrant, officers searched the Gates' automobile and home, resulting in the discovery of more than 350 pounds of marihuana, some weapons and other contraband.

---

1. "In *United States v. Mendoza, et al*, 722 F.2d 96 (5th Cir.1983), the court in footnote #5 stated: 'We recognize that *Gates* dealt with probable cause for the issuance of a warrant for the search of a vehicle and a house. This determination of probable cause, however, is applicable to both warrant and warrantless searches. *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959)....'" 678 S.W.2d at 952.

The United States Supreme Court, substituting the totality of the circumstances standard for that of the two-prong Aguilar-Spinelli approach, determined that the letter along with the corroboration of the tip by independent police investiation was sufficient to justify the magistrate in issuing the search warrant.

Thus, in *Gates*, supra, independent police investigators corroborated at least the following allegations made in the letter from the anonymous informant:

(1) Sue and Lance Gates had lived at Greenway, off Bloomingdale Rd.

(2) Sue Gates drove the car to Florida.

(3) Lance Gates flew to Florida.

(4) Lance Gates drove the car back to Illinois.

■ In the instant case the following allegations made by the anonymous informant were corroborated by independent police investigations:

(1) Appellant was with another Cuban male in a red American Motors Pacer.

(2) The license plate number was RUV 662.

(3) The automobile had a red rag in place at the gas cap.

(4) The destination of the automobile was number 54 of the Casa Maria Apartments.

(5) The activity occurred within a short time of the tip.

The independent police corroboration in the instant case was surely not any less extensive than in *Gates*, supra, simply because the officers had less time. The amount of time the officers have for investigation does not control the issue of probable cause, but rather, the amount of effective corroboration the officers make in the time allowed. In the instant case the independent investigation of the police confirmed every aspect of the informant's tip save whether or not the vehicle actually contained the contraband.

The United States Supreme Court has recognized the probative value of the corroborative efforts of police officials on several occasions. In *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), an informant reported that the defendant would arrive by train in Denver on one of two days carrying a quantity of heroin. The informant also supplied police with a detailed physical description of the defendant including his clothing and manner of walk. Based on this information police officials detained a person matching the defendant's description at the train station on one of the days in question. A search resulted in the discovery of heroin. The Supreme Court held the probable cause underlying the search sufficient, saying that the arresting officer,

> had personally verified every facet of the information given him by Hereford [the informant] except whether petitioner had accomplished his mission and had the three ounces of heroin on his person or in his bag. And surely, with every other bit of Hereford's information being thus personally verified, [the officer] had reasonable grounds to believe that the remaining unverified bit of Hereford's information—that Draper would have the heroin with him—was likewise true.

358 U.S. at 313, 79 S.Ct. at 333.

Although *Draper*, supra, involved a tip by a previously reliable informant, and the instant case involved a tip by an unknown informant, this distinction is far less significant where the anonymous tip has been substantially corroborated. *Gates*, supra, 462 U.S. at 244, 103 S.Ct. at 2335. The corroborated portions of the tip make the uncorroborated more likely. "Because an informant is right about some things, he is more probably right about other facts." *Spinelli*, supra, 393 U.S. at 427, 89 S.Ct. at 594 (White, J. concurring).

Appellant argues that his behavior in the instant case is consistent with innocent activity. This issue was also addressed in *Gates*, supra. The Supreme Court said, "In making a determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of non-criminal acts." *Gates*, supra, 462 U.S. at 243, fn. 13, 103 S.Ct. at 2335, fn. 13. In the instant case, just as in *Gates*, supra, seemingly innocent

behavior becomes suspicious in light of the anonymous tip. This is especially true in the instant case because of the prior surveillance of apartment 54 and the surrounding area due to suspected narcotics activity.

In conclusion, the concept of probable cause is a fluid one. It deals in probabilities, not certainties. "It is enough, for purposes of assessing probable cause, that 'corroboration through other sources of information reduced the chances of a reckless or prevaricating tale,' thus providing 'a substantial basis for crediting the hearsay.' *Jones v. United States,* [362 U.S. 257, 269, 271, 80 S.Ct. 725, 735, 736, 4 L.Ed.2d 697 (1960).]" *Gates,* supra, at 245, 103 S.Ct. at 2335.

■ In the instant case we hold that the totality of the circumstances, i.e., the anonymous tip coupled with the independent police corroboration and the surveillance at the apartment and surrounding area based on previously gathered independent information about apartment 54, provided the officers involved with sufficient probable cause to search appellant's automobile. *Gates,* supra.

Accordingly, the judgment of the Court of Appeals is reversed and the conviction of the trial court is affirmed.

CLINTON and CAMPBELL, JJ., concur in the result.

TEAGUE, J., dissents and would dismiss the State's Petition for Discretionary Review as having been improvidently granted because the unpublished opinion by the Houston First Court of Appeals correctly disposed of the issue.