

# NUMBER 13-08-543-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

MILES PARK,                                                            Appellant,

v.

THE STATE OF TEXAS,                                                   Appellee.

### On appeal from the 94th District Court
### of Nueces County, Texas.

# DISSENTING MEMORANDUM OPINION

### Before Justices Yañez, Benavides, and Vela
### Dissenting Memorandum Opinion by Justice Vela

The trial judge found, and I agree, that Officer Wright's entry into appellant's

residence was justified. The majority, however, concludes that "taking into account the

facts known to Officer Wright at the time the police entered appellant's residence, . . . it was not reasonable for the trial court to determine that appellant was reaching for a weapon when appellant reached toward the couch." Slip op. at 14-15. I, however, am reluctant to second-guess our police officers who must make split-second decisions concerning the possible use of a weapon based upon the circumstances they encounter while conducting investigations either on the street or at a residence. Because the majority overlooks the danger a police officer, such as Officer Wright, faces when encountering a person whose quick, furtive movement causes the officer to believe he is reaching for a weapon, I respectfully dissent.

The Fourth Amendment prevents only unreasonable searches. *Bell v. Wolfish*, 441 U.S. 520, 558 (1979), and under the circumstances of this case, I do not believe the search was unreasonable. "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." *Id*. at 559. "Moreover, courts should not second-guess police officers' conduct from the peace of a judge's chambers." *Rhodes v. State*, 913 S.W.2d 242, 249 (Tex. App.–Fort Worth 1995), *aff'd*, 945 S.W.2d 115 (Tex. Crim. App. 1997) (internal quotation marks omitted). Instead, "[r]easonableness must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*.

We review the trial court's ruling on a suppression motion for abuse of discretion. *Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005). "When reviewing a trial judge's decision to deny a motion to suppress where probable cause to search was challenged, an appellate court must afford 'almost total deference to a trial court's express

2

or implied determination of historical facts and review *de novo* the court's application of the law of search and seizure to those facts.'" *Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2006) (quoting *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000)). When a trial court makes no explicit findings of fact, as in this case, we "must 'view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record.'" *Id*. (quoting *Ross*, 32 S.W.3d at 855).

The majority highlights the fact that Officer Wright's partner, "Officer Moss[,] was unsuccessful in his attempt to purchase narcotics from anyone at appellant's residence. According to Officer Wright, because the undercover buy was unsuccessful and there were 'no informants to that house,' the next step was to knock on the door and explain why they were there." Slip op. at 5-6. However, the motives of Officers Wright and Moss to conduct a "knock and talk" at appellant's residence—even if conducted after an unsuccessful attempt to buy drugs there—is not dispositive of the issue in this appeal. A police officer's motive does not invalidate objectively justifiable behavior under the Fourth Amendment. *See Whren v. United States*, 517 U.S. 806, 813-15 (1996); *Barrios v. State*, 27 S.W.3d 313, 318-19 (Tex. App.–Houston [1st Dist.] 2000, pet. ref'd). Case law states that as long as a person in possession of property has not made express orders prohibiting trespass, a police officer may enter upon residential property, follow the usual path to the home's front door, and knock on it for the purpose of asking the occupant questions. *Cornealius v. State*, 900 S.W.2d 731, 733-34 (Tex. Crim. App. 1995); *Washington v. State*, 152 S.W.3d 209, 214 (Tex. App.–Amarillo 2004, no pet.); *Nored v. State*, 875 S.W.2d 392, 396-

97 (Tex. App.–Dallas 1994, pet. ref'd).  Here, the record does not show the existence of an express order forbidding Officers Wright and Moss from approaching appellant's door and knocking on it.  Thus, the law permitted the officers to knock on appellant's door and speak to him about drug dealing in the residence.

However, "[a] warrantless police entry into a person's home is presumptively unreasonable unless it falls within the scope of one of a few well-delineated exceptions." *Johnson v. State*, 226 S.W.3d 439, 443 (Tex. Crim. App. 2007).  One of these exceptions "requires the police to jump over two distinct hurdles." *Parker v. State*, 206 S.W.3d 593, 596 (Tex. Crim. App. 2006).  The first hurdle requires the existence of probable cause. *Id*. "The second hurdle is that exigent circumstances, those which justify an immediate need to enter a residence without first obtaining a search warrant, must also exist." *Id*. at 597.

When the question is whether probable cause exists to cross the threshold of a private residence, probable cause may point to the location or to a specific person. *Id*.  In *Estrada v. State*, the court of criminal appeals reiterated the probable-cause standard that applies to a warrantless entry or search of a specific location:  "'Probable cause to search exists when reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead a man of reasonable prudence to believe that the instrumentality of a crime or evidence of a crime will be found.'"  154 S.W.3d 604, 609 (Tex. Crim. App. 2005) (quoting *McNairy v. State*, 835 S.W.2d 101, 106 (Tex. Crim. App. 1991)).  It is not necessary that such a belief be correct or more likely true than false.  *See Texas v. Brown*, 460 U.S. 730, 742 (1983).  The concept of probable cause, dealing as it does in probabilities, not certainties, is a fluid one.  *See Angujo v. State*, 727 S.W.2d 276,

4

280 (Tex. Crim. App. 1987). "[T]he determination of whether an officer has probable cause and exigent circumstances to enter a person's home without a warrant is a factual one based on the sum of all the information known to the officer at the time of entry." *Parker*, 206 S.W.3d at 600. "Just as an officer, in the heat of the moment, will use all facts available to him in deciding whether to enter a home without a warrant, so must a reviewing court analyze each piece of evidence as part of the totality of information, as it relates to both the probable cause and the exigent circumstances determinations." *Id*. at 601. "If the State does not adequately establish both probable cause and exigent circumstances, then a warrantless entry will not withstand judicial scrutiny." *Gutierrez v. State*, 221 S.W.3d 680, 685-86 (Tex. Crim. App. 2007). The same facts that give rise to probable cause may also be relevant to an analysis of exigent circumstances. *State v. Hoffman*, 293 S.W.3d 633, 636 (Tex. App.–San Antonio 2009, pet. ref'd), *see Parker*, 206 S.W.3d at 600-01.

**A. Probable Cause to Enter Appellant's Residence**

The reasonably trustworthy facts and circumstances within Officer Wright's knowledge prior to the officers' initial entry into appellant's apartment included: (1) "anonymous tips" that the apartment might contain drugs; (2) Officer Wright did not know appellant, did not know if he was violent, and did not know how many people were in the apartment; (3) when Officer Wright knocked on appellant's front door, appellant opened it and "was a little irritated that the police were at his door"; (4) while appellant stood in the doorway, he told Officer Wright that he "briefly had a bad roommate that kind of took over his apartment and that person was actually the one selling drugs, all he had done was smoke a little marijuana"; (5) Officer Wright smelled marijuana; (6) while appellant talked

5

to Officer Wright, he saw appellant make "a quick furtive movement" by putting his hand "into the couch cushion under the couch," which was "probably two feet" from the door where Officer Wright stood; (7) because Officer Wright thought appellant "was reaching for some type of weapon," he entered the apartment and placed appellant in hand restraints; and (8) Officer Wright entered the apartment for his "safety."

The majority states that "when defense counsel asked Officer Wright if appellant had '[gone] towards the couch in a threatening manner,' Officer Wright stated, 'No, it was just a quick, furtive movement.'" Slip op. at 14. If a suspect inside a residence makes a quick, furtive movement with his or her hand into a couch cushion, which was two feet from an officer who is standing at the door for the purpose of conducting a narcotics investigation, this Court should not prevent that officer from entering the residence in order to protect his or her life. To a trained officer, such as Officer Wright, appellant's conduct hardly qualified as innocent behavior, and Officer Wright could reasonably interpret it as threatening. Obviously, a person inside a residence has greater access to weapons concealed therein—thereby increasing the threat to police officers—than the person would have when standing outside the residence. I find that the threat to Officer Wright's safety was neither imagined nor objectively unreasonable under these particular circumstances. Thus, Officer Wright had probable cause to enter the apartment because the reasonably trustworthy facts and circumstances within his knowledge would lead a person of reasonable prudence to believe that the instrumentality of a crime; i.e., a weapon, would be found inside the couch.

6

When asked if he had any reason to suspect that appellant "would be getting a weapon to attack [him]," Officer Wright responded that he "[has] no idea what people are going to do when they reach into couches." Slip op. at 13. As the Supreme Court stated in *Graham v. Connor*, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving. . . ." 490 U.S. 386, 396-97 (1989).

## B. Exigent Circumstances to Enter the Residence

The majority states that "'[s]ituations creating exigent circumstances usually include factors pointing to some danger to the officer. . . .'" Slip op. at 14. This is exactly what Officer Wright faced in this case. "A variety of . . . circumstances may place a police officer in situations in which a warrantless entry is viewed as a reasonable reaction by the officer. Situations creating exigent circumstances usually include factors pointing to some danger to the officer. . . ." *McNairy*, 835 S.W.2d at 107. Officer Wright testified that he thought appellant "was reaching for some type of weapon" and that he entered the apartment for his "safety." Considering the totality of the circumstances, Officer Wright was justified in entering the apartment because exigent circumstances existed that allowed him to insure his safety and the safety of Officer Moss. *See id*.

The majority states that "[a]ppellant asserted that he reached for the couch after Officer Wright came into the house, . . . ." Slip op. at 8. However, "[a]s the sole trier of fact during a suppression hearing, the trial court may believe or disbelieve all or any part of a witness' testimony." *Wilson v. State*, No. PD-0307-09, 2010 WL 715253, at *3 (Tex. Crim. App. March 3, 2010). Accordingly, the trial court could have disbelieved all of appellant's

7

testimony and believed Officer Wright when he testified that he entered the residence after he saw appellant make the quick, furtive movement.

Another exception that permits a warrantless police entry into a person's residence arises when an officer conducts a self-protective search for weapons. The Fourth Amendment permits an investigative detention if, under the totality of the circumstances, the officer has reasonable suspicion supported by articulable facts that the person detained is, has been, or soon will be engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). These facts must amount to more than a mere articulable hunch or suspicion. *Williams v. State*, 621 S.W.2d 609, 612 (Tex. Crim. App. 1981). When determining whether reasonable suspicion exists, we consider the facts known to the officer at the moment of detention. *Davis v. State*, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997). Additionally, we base a determination of reasonable suspicion on common-sense judgments and inferences about human behavior. *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000).

The majority concluded that "Officer Wright did not articulate any facts to support his belief that appellant was reaching for a weapon." Slip op. at 14. I respectfully disagree with this conclusion. While standing outside of appellant's front door, Officer Wright saw appellant make a quick, furtive movement, putting his hand into the couch. This made Officer Wright think that appellant was reaching for a weapon. Citing officer safety, he entered the apartment and detained appellant. Officer Wright, a peace officer with nine years' experience, testified that he was trained to secure a person whom he believed was reaching for a weapon. Under the totality of the circumstances, Officer Wright had

reasonable suspicion supported by articulable facts, which amounted to more than a mere articulable hunch or suspicion, that appellant would soon be engaged in criminal activity; i.e., assault on a police officer.

Based on the facts known to Officer Wright prior to his entry into the apartment, I find that the trial court was within its discretion to determine that Officer Wright had reasonable suspicion supported by articulable facts that appellant soon would be engaged in criminal activity and, I would hold that the officers' entry into the residence was justified and that the trial court did not abuse it discretion in denying appellant's motion to suppress. See *Watson v. State*, 861 S.W.2d 410, 416 (Tex. App.–Beaumont 1993, pet. ref'd).

For these reasons, I respectfully dissent.


ROSE VELA
Justice


Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the 25th
day of March, 2010.

9